[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
March 25, 2008
THOMAS K. KAHN
CLERK

_____

No. 07-10579
Non-Argument Calendar

_____

D. C. Docket No. 06-80086-CR-DTKH

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DEWEESE BURROWS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(March 25, 2008)**

Before TJOFLAT, MARCUS and WILSON, Circuit Judges.

PER CURIAM:

A Southern District of Florida jury found Deweese Burrows guilty of both

counts of a two-count indictment: Count 1, attempting to import 500 grams or more of cocaine into the United States on or about November 13, 2004, and Count 2, conspiracy to commit the Count 1 substantive offense, all in violation of 21 U.S.C. §§ 952(a), 960(a)(1), (b)(2), and 963. The district court sentenced him to concurrent prison terms of 84 months, and he now appeals both his convictions and his sentences.

Burrows appeals his convictions on the ground that the Government's proof failed to establish the elements of the charged offenses. To convict Burrows of the Count 1 attempt offense, the Government had to prove beyond a reasonable doubt that he: (1) acted with the type of culpability required for the commission of the crime; and (2) engaged in conduct that constituted a substantial step toward the commission of the crime, under circumstances strongly corroborative of the required culpability. United States v. Forbrich, 758 F.2d 555, 557 (11th Cir. 1985). To convict Burrows of conspiracy, the Government had to prove "(1) that a conspiracy existed, (2) that [Burrows] knew of it, and (3) that the [Burrows], with knowledge, voluntarily joined it." United States v. Perez-Tosta, 36 F.3d 1552, 1557 (11th Cir. 1994). Further, in a case such as the one here, the evidence must show that the defendant knew that cocaine was to be imported. United States v. Camargo-Vergara, 57 F.3d 993, 1000 (11th Cir. 1995). With these principles in

2

hand, we consider the case against Burrows.

The Government's case was built principally on the testimony of two of Burrows's co-conspirators, Richard Johnson, who like Burrows was a resident of West End, Grand Bahamas, and Darryl Calloway of Palm Beach, Florida,[1] and several telephone conversations the DEA recorded over Calloway's telephone (which the DEA tapped via a court order) between November 4 and 14, 2004, regarding five kilograms of cocaine that was to be transported by boat from the Bahamas to Florida. Johnson, Calloway and Jason Martin had been transporting drugs from the Bahamas to Florida for several years, and Martin, who lived in the Bahamas and knew Burrows, enlisted him to transport the cocaine aboard his, Burrows's, boat. Between November 4 and 14, 2004, the four men – Johnson, Calloway, Martin and Burrows – engaged in a series of telephone calls and meetings which culminated in Burrows's agreement to provide the necessary transportation.

On November 13, Burrows left the Bahamas with the cocaine, which Johnson supplied, and headed to Florida. While en route, Burrows threw the cocaine overboard when he saw aircraft, which appeared to be on the lookout for drug smuggling, circling overhead. Thus, when his boat arrived in the Intracoastal

---

[1] Johnson and Calloway were charged separately, pled guilty and were serving substantial prison terms when they testified at Burrows's trial.

Waterway just north of the Palm Beach Inlet and U.S. Customs officials boarded and searched it, no drugs were found.

After the Government rested its case in chief, Burrows put on a defense, presenting four witnesses, including himself. He testified that he was a Bahamas businessman, that he frequently came to Florida on business, and that he was traveling to Florida for that purpose on November 13. A boatyard owner from Palm Beach testified that Burrows traveled to the United States regularly to purchase goods and supplies for his businesses in the Bahamas. Theresa Oliver, Burrows's fiancé, and Annamae Burrows, his niece, who were aboard his boat, corroborated Burrows's insistence that they were not transporting cocaine to Florida.

At best, Burrows's case set up a swearing match – the Government's case against his. As was its province, the jury found the Government's case compelling and rejected Burrows's. It was the jury's responsibility to make the choice, United States v. Rodriguez, 218 F.3d 1243, 1245 (11th Cir. 2000); hence, we do not disturb its verdicts. We proceed instead to Burrows's appeal of his sentences.

Burrows argues that the district court erred in three respects in determining his offense level under the Sentencing Guidelines. The first error consisted of the court's refusal to reduce his offense level by two levels under U.S.S.G. § 3B1.2 on

the theory that he was less culpable than his co-conspirators. To determine whether a § 3B1.2 reduction applies, a district court first should measure the defendant's role against the relevant conduct for which he has been held accountable. United States v. De Varon, 175 F.3d 930, 940-41 (11th Cir. 1999) (en banc). In cases where the defendant is a drug courier, relevant factual considerations include: (1) the amount of drugs; (2) the fair market value of the drugs; (3) the amount to be paid to the courier; (4) the defendant's equity interest in the drugs; (5) the defendant's role in planning the criminal scheme; and (6) the defendant's role in distribution. Id. at 945. The amount of drugs, in particular, is a material consideration in assessing the defendant's role, and "may be dispositive – in and of itself – in the extreme case." Id. at 943. Further, "when a drug courier's relevant conduct is limited to [his] own act of importation, a district court may legitimately conclude that the courier played an important or essential role in the importation of those drugs." Id. at 942-43.

Although, in many cases, this first method of analysis will be dispositive, the district court also may measure the defendant's culpability in comparison to that of other participants in the relevant conduct. Id. at 944-45. Two sub-principles guide this application of the analysis: (1) the district court should look only to other participants who are identifiable or discernable from the evidence; and (2) only

5

those participants who were involved in the relevant conduct attributed to the defendant may be considered. Id. at 944. Further, a defendant whose role in the relevant conduct was less than that of other participants is not necessarily entitled to a minor-role reduction, where no participants are minor participants. Id.

Here, the district court did not clearly err by finding that Burrows was not entitled to a minor-role reduction since his role in the offense was identical to the conduct for which he was held accountable, and he did not show that he was substantially less culpable than the other participants.

The second error Burrows cites concerns the district court's enhancement of his offense level under U.S.S.G. § 2D1.1(b)(2)(B) for the "boat captain" role he played in the criminal enterprise. That section provides for a two-level enhancement in a defendant's offense level "[i]f the defendant unlawfully imported or exported a controlled substance under circumstances in which . . . the defendant acted as a pilot, copilot, captain, navigator . . . aboard any craft or vessel carrying a controlled substance . . . ." U.S.S.G. § 2D1.1(b)(2)(B). "The adjustment in § 2D1.1(b)(2)(B) plainly is to be applied to convictions for conspiracy and attempt, so long as the necessary factual predicate for the enhancement exists . . . [i]t simply does not matter whether [the defendant] actually carried the controlled substance; his conspiring and his attempt to do so warrant the application of the

6

enhancement." United States v. Rendon, 354 F.3d 1320, 1330 (11th Cir. 2003).

Burrows says that the boat captain enhancement should not apply to him because the cocaine never got to the United States. His point lacks merit. A conspiracy and an attempt to import a controlled substance are sufficient to meet the requirements for an enhancement under § 2D1.1(b)(2)(B). See United States v. Rendon, 354 F.3d 1320, 1330 (11th Cir. 2003).

Burrows's third assignment of error is that the court erred in enhancing his offense level for obstruction of justice pursuant to U.S.S.G. § 3C1.1. Under that section, if the defendant willfully obstructs the administration of justice with respect to the prosecution of the instant offense, and the obstructive conduct related to the defendant's offense of conviction, the district court should increase the offense level by two levels. U.S.S.G. § 3C1.1. The obstruction of justice enhancement may be imposed if the defendant "testifies untruthfully concerning a material fact during the course of judicial proceedings." United States v. Wallace, 904 F.2d 603, 604 (11th Cir. 1990) (citing U.S.S.G. § 3C1.1, cmt. (n.1)).

There was sufficient evidence, as discussed above, based on the testimony of Johnson and Calloway, to support the court's finding that Burrows's trial testimony was untruthful as to various material matters. We therefore find no error in the enhancement.

Having rejected Burrows's challenges to his sentences, they are due to be affirmed along with his convictions.

AFFIRMED.